

FILED IN OPEN COURT
U.S.D.C. Atlanta

APR 23 2024



Kevin P. Weimer, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CRAIG MURFEE ALLEN | Criminal Indictment<br><br>No. 1 24-CR-130 |

THE GRAND JURY CHARGES THAT:

**Counts One through Fifteen**
**Wire Fraud**

1. Beginning on a date unknown but no later than in or about February 2019 and continuing through in or about January 2023, in the Northern District of Georgia and elsewhere, the Defendant, CRAIG MURFEE ALLEN, devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were false and fraudulent when made and caused to be made and that said omissions were and would be material.

**Background**

2. At all times relevant to this Indictment, the Cheetah Fund, L.P. (Cheetah Fund) was a Georgia limited partnership that maintained its principal place of business in the Northern District of Georgia. The Cheetah Fund was a private investment fund that invested in the public equity market, such as the

stock market. The Cheetah Fund's limited partnership agreement provided that the "primary purpose and business of the [Cheetah Fund] Partnership [was] to acquire, purchase, invest in" or otherwise transact in "[s]ecurities directly and by investing."

3. C.M. Allen Capital Management, Inc. exclusively managed the Cheetah Fund as the General Partner. The Cheetah Fund investors were the Limited Partners.

4. Defendant ALLEN was the sole shareholder, executive officer, and director of C.M. Allen Capital Management, Inc. Defendant ALLEN was responsible for the management of the Cheetah Fund's investment portfolio on behalf of C.M. Allen Capital Management.

5. Defendant ALLEN, a resident of Atlanta, Georgia, conducted business for the Cheetah Fund in the Northern District of Georgia and elsewhere.

6. Regions Bank was a financial institution headquartered in Birmingham, Alabama. Defendant ALLEN opened a Regions Bank account ending in 4339 for the Cheetah Fund and deposited investor money in and transferred investors' money out of the account. Defendant ALLEN also had a personal Regions Bank account ending in 9227.

7. Wells Fargo Bank was a financial institution headquartered in San Francisco, California. Defendant ALLEN opened a Wells Fargo Bank account ending in 2098 for the Cheetah Fund and deposited investors' money in and transferred investors' money out of the account. Defendant ALLEN also had a personal account with Wells Fargo Bank ending in 2426.

## Scheme and Artifice to Defraud

8. Defendant ALLEN engaged in a scheme to defraud Cheetah Fund investors. Investors wired funds or wrote checks for Defendant ALLEN to invest in the Cheetah Fund. Defendant ALLEN spent some of investors' money on his personal expenses, and then used some of the investors' money to in fact invest in the Cheetah Fund. The money that Defendant ALLEN invested in the Cheetah Fund was used to buy stocks, but he misrepresented the investment returns.

9. Through a combination of false account statements, tax documents, emails, and other Cheetah Fund documents, Defendant ALLEN defrauded investors out of more than $7 million. These documents influenced investors to invest, reinvest, and/or maintain money in the Cheetah Fund.

10. Defendant ALLEN sent investors monthly statements. As early as May 2019 these monthly statements inflated the amount of the Cheetah Fund's investment returns. Individual investors received account statements that falsely showed that their investments gained approximately 30% or more within a year of investing in the Fund.

11. In furtherance of the scheme, Defendant ALLEN sent investors false Schedule K-1 forms. A Schedule K-1 is a tax document used to report income to taxpayers for partnership income. These Schedule K-1 forms falsely showed positive returns for the Cheetah Fund and purported to be from a reputable accounting firm, Elliot Davis, by using Elliot Davis's logo.

3

12. But, unknown to the investors, Elliot Davis did not prepare the Schedule K-1 forms, did not author the emails sending the Schedule K-1 forms, and did not approve Defendant ALLEN's use of its logo.

13. Defendant ALLEN also sent Cheetah Fund tear sheets to investors that falsely reported the Cheetah Fund's historical performance as achieving 73.24% annual performance in 2018, 48.82% annual performance in 2019, and 69.76% annual performance in 2020. A tear sheet is a fact sheet that provides an overview of an investment and its historical performance. The Cheetah Fund's tear sheet was a one-page overview of the investment fund describing how it worked and showing its monthly performance for the past several years.

14. Defendant ALLEN knew that the Cheetah Fund was not achieving the positive investment returns that he reported to investors. Instead of accurately reporting returns to investors and prospective investors, Defendant ALLEN used the fraudulent account statements, emails, tax documents, and tear sheets to falsely represent and cause others to falsely represent that the Cheetah Fund had the reported positive returns.

15. The false account statements, emails, and tax documents that Defendant ALLEN sent investors lulled them into a false sense of security, delayed their complaints and discovery of the scheme, and caused them to invest additional money in the Cheetah Fund.

16. Defendant ALLEN also spent investors' money, which was supposed to be invested in the Cheetah Fund, for his personal benefit. Investors wired and wrote checks payable to the Cheetah Fund's bank accounts at Regions Bank and

Wells Fargo Bank. Once the investors' money was deposited into the Cheetah Fund's accounts, ALLEN wrote checks payable to himself and then deposited these checks into bank accounts held in his name. Defendant ALLEN used the money for personal expenses, including over $100,000 on travel to London, Paris, Zurich, Beaver Creek, Colorado, and Naples and Ponte Verda, Florida, over $200,000 on private school tuition, over $15,000 on children's summer camps, over $400,000 for personal credit card debts, over $100,000 on tuition and housing expenses for a college student, and over $50,000 to pay back other investors.

17. The Cheetah Fund subscription agreement provided that Defendant ALLEN would not earn fees. Instead, Defendant ALLEN was entitled to performance allocations if the Cheetah Fund reached certain performance thresholds. The Cheetah Fund did not reach the thresholds that would have warranted Defendant ALLEN earning the fees.

18. Defendant ALLEN was not entitled to use investors' investment money for personal expenses and did not disclose to investors that he was not investing all of their money into the Cheetah Fund. Defendant ALLEN also did not disclose that new investor money was being used to pay back other investors.

19. After the fraud was uncovered, Defendant ALLEN admitted to some investors that he falsely reported that the Cheetah Fund was gaining money, when in truth the Cheetah Fund was losing money.

### Execution of Scheme and Artifice to Defraud

20. To execute this scheme to defraud, Defendant ALLEN caused the transmission of interstate wire communications. On or about the dates set forth below, in the Northern District of Georgia and elsewhere, Defendant ALLEN knowingly devised and participated in the aforesaid scheme and artifice to defraud, for the purpose of obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, as well as by omissions of material fact, knowing and having reason to know that the pretenses, representations, promises, and omissions were and would be material, and, with intent to defraud, did cause the following wire communications to be transmitted in interstate commerce:

| Count | Date (on or about) | Description |
| --- | --- | --- |
| 1 | Jan 15, 2020 | Defendant ALLEN emailed E.G. with subject line "December_2019" attaching a fraudulent account statement falsely showing the Cheetah Fund's gains |
| 2 | Jan 27, 2020 | E.G. wired Defendant ALLEN $30,000 for investment into the Cheetah Fund Regions Bank account ending in 4339 |
| 3 | March 10, 2020 | Defendant ALLEN emailed J.S. with subject line "Market_Update_February_Statement" attaching a fraudulent account statement showing the Cheetah Fund's gains |

| 4 | Sept 15, 2020 | J.S. wired Defendant ALLEN $150,000 for investment into the Cheetah Fund's Regions Bank account ending in 4339 |
| --- | --- | --- |
| 5 | Feb 18, 2021 | Defendant ALLEN emailed G.C. with subject line "Cheetah Tear Sheet" attaching a fraudulent tear sheet showing the Cheetah Fund's historical performance |
| 6 | Feb 22, 2021 | G.C. wired Defendant ALLEN $150,000 for investment into the Cheetah Fund's Regions Bank account ending in 4339 |
| 7 | Feb 26, 2021 | G.C. wired Defendant ALLEN $100,000 for investment into the Cheetah Fund's Regions Bank account ending in 4339 |
| 8 | March 8, 2021 | G.C. wired Defendant ALLEN $250,000 for investment into the Cheetah Fund's Regions Bank account ending in 4339 |
| 9 | April 19, 2021 | Defendant ALLEN emailed M.G. with subject line "Spreadsheet_P/L" attaching a fraudulent profit and loss spreadsheet showing M.G. gained $406,654 in the Cheetah Fund |
| 10 | July 9, 2021 | M.G. wired Defendant ALLEN $565,000 for investment into the Cheetah Fund's Regions Bank account ending in 4339 |
| 11 | Aug 12, 2021 | Defendant ALLEN emailed C.T. with subject line "Cheetah July Statement" attaching a fraudulent account statement showing the Cheetah Fund's gains |

| | | |
|---|---|---|
| 12 | Sept 28, 2021 | Defendant ALLEN emailed L.H. with subject line "K1" attaching a fraudulent K-1 statement falsely showing the Cheetah Fund's gains and falsely portraying that it was forwarded from Elliot Davis |
| 13 | Dec 12, 2021 | Defendant ALLEN emailed G.C. with subject line "Cheetah November Statement" attaching a fraudulent account statement falsely showing the Cheetah Fund's gains |
| 14 | Dec 12, 2021 | Defendant ALLEN emailed L.H. with subject line "Cheetah Statement November" attaching a fraudulent account statement falsely showing the Cheetah Fund's gains |
| 15 | Feb 10, 2022 | Defendant ALLEN emailed M.H. with subject line "Cheetah Statement January" attaching a fraudulent account statement falsely showing the Cheetah Fund's gains |

All in violation of Title 18, United States Code, Section 1343.

### Counts Sixteen Through Twenty-Five
### Money Laundering

21. The factual allegations in paragraphs two through nineteen are incorporated herein.

22. On or about the dates set forth below, in the Northern District of Georgia and elsewhere, the Defendant, CRAIG MURFEE ALLEN, knowingly engaged and attempted to engage in monetary transactions affecting interstate commerce by and through a financial institution, as set forth below, each such transaction involving criminally derived property of a value greater than $10,000,

such property having been derived from a specified unlawful activity, that is, wire fraud:

| Count | Date (on or about) | Monetary Transaction |
|---|---|---|
| 16 | July 29, 2021 | Deposit of check number 0099 in the amount of $65,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |
| 17 | Aug 1, 2021 | Deposit of check number 0100 in the amount of $30,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |
| 18 | Aug 23, 2021 | Deposit of check number 1001 in the amount of $30,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |
| 19 | Sept 7, 2021 | Deposit of check number 1002 in the amount of $45,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |
| 20 | Sept 17, 2021 | Deposit of check number 1003 in the amount of $45,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |
| 21 | Oct 5, 2021 | Withdrawal of check number 1004 made payable to investor E.G. in the amount of $50,000 from the Cheetah Fund, L.P. Wells Fargo account ending in 2098 |
| 22 | Oct 5, 2021 | Deposit of check number 1005 in the amount of $65,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo |

| Count | Date (on or about) | Monetary Transaction |
|---|---|---|
|  |  | account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |
| 23 | Oct 27, 2021 | Deposit of check number 1006 in the amount of $45,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |
| 24 | Nov 17, 2021 | Deposit of check number 3333 in the amount of $25,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |
| 25 | Nov 26, 2021 | Deposit of check #3334 in the amount of $20,000 made payable to CRAIG ALLEN from The Cheetah Fund, L.P. Wells Fargo account ending in 2098 into Defendant ALLEN's Wells Fargo account ending in 2426 |

All in violation of Title 18, United States Code, Section 1957.

### Count Twenty-Six
### Securities Fraud

23. The factual allegations in paragraphs two through nineteen are incorporated herein.

24. Beginning on a date unknown but no later than in or about February 2019 and continuing through in or about January 2023, in the Northern District of Georgia and elsewhere, the Defendant, CRAIG MURFEE ALLEN, did knowingly execute, and attempt to execute, a scheme and artifice to defraud other persons in connection with the Cheetah Fund's investments in publicly traded stocks, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of

securities held by the Cheetah Fund, which were securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934.

All in violation of Title 18, United States Code, Section 1348.

## Forfeiture

25. Upon conviction of one or more of the offenses alleged in Counts One through Fifteen and Twenty-Six of this Indictment, the Defendant, CRAIG MURFEE ALLEN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Fifteen and Twenty-Six of this Indictment.

26. Upon conviction of one or more of the offenses alleged in Counts Sixteen through Twenty-Five of this Indictment, the Defendant, CRAIG MURFEE ALLEN, shall forfeit to the United States all property, real or personal, involved in such offenses, or any property traceable to such property, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency representing the amount of property obtained as a result of the offenses alleged in Counts Sixteen through Twenty-Five of the Indictment.

27. If, as a result of any act or omission of the Defendant, any of the above-described property:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred to, sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property, which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property.

A ____True____ BILL

_____
FOREPERSON

RYAN K. BUCHANAN
United States Attorney

_____
NATASHA COOPER
Assistant United States Attorney
Georgia Bar No. 612489

_____
CHRISTOPHER J. HUBER
Assistant United States Attorney
Georgia Bar No. 545627

600 U.S. Courthouse  
75 Ted Turner Drive SW  
Atlanta, GA 30303  
404-581-6000; Fax: 404-581-6181